UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                       )
CHRISTOPHER LACCINOLE,                 )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )     C.A. No. 21-252 WES
                                       )
STUDENTS FOR LIFE ACTION INC.&         )
KRISTAN HAWKINS &                      )
DOES 1-10 INCLUSIVE,                   )
                                       )
          Defendants.                  )
_____)

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Christopher Laccinole's Motion to Remand, ECF No. 15, and Defendants' Motion for Judgment on the Pleadings, ECF No. 12; Motion to Strike, ECF No. 20; and Motion for Sanctions and to Declare Plaintiff a Vexatious Litigant, ECF No. 13.  For the reasons below, Plaintiff's Motion to Remand is DENIED, and Defendants' Motion for Judgment on the Pleadings, ECF No. 12, is GRANTED in part and DENIED in part.  Defendants' Motion to Strike and Motion to Declare Plaintiff a Vexatious Litigant are DENIED.

I.   BACKGROUND

Plaintiff Christopher Laccinole is a prolific pro se litigant well-practiced in Telephone Consumer Protection Act ("TCPA") litigation.  His Complaint alleges these facts: Defendant Students for Life Action Inc. ("S4L") is a Virginia corporation.  Compl.

¶ 1, ECF No. 1-1. In 2019, Mr. Laccinole bought a telephone and prepaid, limited text message plan which he added to the national Do Not Call registry. Id. ¶¶ 32-33, 79. He never created a S4L account or registered for text messages with S4L. Id. ¶¶ 43-44.

On January 24, 2020, Mr. Laccinole received the first seemingly mass text message from S4L from the phone number 53445. Id. ¶ 34-36. He received another message about two hours later. Id. ¶ 37. Plaintiff replied, "Please don't send me anymore messages" to the second text but received an error message stating, "ERROR! Keyword does not exist." Id. ¶¶ 38-39. Plaintiff then replied "STOP" and received the same error message. Id. ¶¶ 41-42. Thus, neither message provided an effective opt-out mechanism. Id. ¶¶ 38-40.

Plaintiff continued to receive text messages from S4L through a variety of phone numbers. Id. ¶¶ 46-53. On February 6, 2020, Plaintiff received a message from (855) 465-4726. Id. ¶¶ 47-49. This message, purportedly from Defendant Kristan Hawkins, contained the language "Reply STOP to opt out." Id. ¶¶ 48, 51. Mr. Laccinole does not specifically allege he replied "STOP" to this message. However, on February 25, 2020, Plaintiff sent a message to 76000, another alleged S4L number, stating, "Please don't send me anymore messages." Id. ¶¶ 57, 59.

Based on their content, Mr. Laccinole alleges Defendants sent these messages using an automatic telephone dialing system

2

("ATDS") that "transmits thousands of automated text message without any human involvement" to randomly or sequentially generated telephone numbers. Id. ¶¶ 61-64. Plaintiff claims these text messages interfered with his right to use his telephone service and caused him anxiety, frustration, and annoyance. Id. ¶ 81.

Plaintiff sued in Rhode Island state court on May 11, 2021, alleging Defendants violated the TCPA and its implementing regulations in twenty-four ways, along with violations of the Virginia Telephone Privacy Protection Act ("VTPPA"), Va. Code § 59.1-510; Rhode Island Deceptive Trade Practices Act ("RI DTPA"), R.I. Gen. Laws § 6-13.1-1 et seq.; and Rhode Island Privacy Act, R.I. Gen. Laws § 9-1-28. Compl. 1-2. Defendants filed a timely Notice of Removal on June 9, 2021. Defs.' Notice Removal ¶ 4, ECF No. 1.

II. DISCUSSION

    A. Motion To Remand

    Plaintiff has moved to remand; his argument relates to a number of Defendants' arguments that he lacks standing.

        1. Legal Standard

    A case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "A motion to remand is decided by reference to the complaint at the time the petition for

3

removal was filed." Abdelnour v. Bassett Custom Boatworks, Inc., 614 F. Supp. 2d 123, 126 (D. Mass. 2009).  This Court "must take the complaint's well-pleaded facts as true and indulge all reasonable inferences in the pleader's favor." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).  The complaint must present the plausible "facts necessary to demonstrate standing." Id.

Article III standing requires the plaintiff to have "(1) suffer[ed] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Plaintiff challenges the first element.

2.  Standing

Plaintiff sets forth four arguments for why his injury is insufficient: (1) this Court lacks jurisdiction over "frivolous" claims; (2) he does not use the word injury in the Complaint and thus does not have one; (3) he wanted the robocalls; and (4) text messages cannot cause injury.

The first three arguments may be dispatched quickly.  This Court has addressed the first two arguments in Plaintiff's prior

cases.  Both fail again, and for the same reasons.[1]  The third –
that he hoped to receive the messages so that he could sue and is
thus not injured - is nowhere in the Complaint.  <u>See generally</u>
Compl.  Instead, Plaintiff describes the calls as an interference
with his telephone service that caused him anxiety, frustration,
and annoyance and cost him money.  <u>Id.</u> ¶¶ 81, 90-97.  Any argument
about his true motives is premature; for now, the argument about
invited harm fails.[2]

    Thus, remand turns on the fourth argument - whether unwanted,
solicitous text messages may constitute an injury-in-fact.  Both

---

[1] <u>See Laccinole v. Global Payments Check Services, LLC</u>, C.A.
No. 21-00090-WES, 2021 WL 2805378, at *1 (D.R.I. July 2, 2021)
(rejecting Plaintiff's argument that 'frivolous' case should be
remanded to state court for lack of subject matter jurisdiction);
<u>U.S. Veterans Assistance Found., Inc.</u>, C.A. No. 21-160 WES, 2021
WL 3213005, at *1 (denying motion to remand even though the word
"injury" does not appear in Complaint because Plaintiff alleges
the type of harm "Congress sought to prevent"); Sept. 3, 2021,
Order at 3, <u>Laccinole v. I.C. System, Inc.</u>, 1:21-cv-00061-WES-LDA,
ECF No. 10 ("Because the Plaintiff here sufficiently alleged
suffering annoyance, invasion of privacy, and other injuries, his
argument fails even under the stricter injury requirement
articulated in <u>Leyse</u>.").

[2] After discovery, this claim may hold water.  <u>See</u> Defs.' Mot.
J. Pleadings 21-22.  In <u>Stoops v. Wells Fargo Bank, N.A.</u>, the
Western District of Pennsylvania granted summary judgment for the
defendant in part because "[p]laintiff had admitted [at
deposition] that she files TCPA actions as a business."  197
F.Supp.3d 782, 798 (W.D. Pa. 2016). Because that plaintiff's "only
purpose in using her cell phones is to file TCPA lawsuits," the
text messages did not "affect the privacy rights that the TCPA is
intended to protect." <u>Id.</u> at 800 (internal citations omitted.)
Here, although perhaps Mr. Laccinole is doing the same, this is a
question best answered – as it was in <u>Stoops</u> – after discovery.

Plaintiff and Defendants argue they are not.[3]  The First Circuit has yet to rule on the question.  But other circuits have overwhelmingly found in similar cases that these messages constitute injury-in-fact.  See Gadelhak v. AT&T Services, Inc., 950 F.3d 458, 463 (7th Cir. 2020) ("[A] few unwanted automated text messages may be too minor an annoyance to be actionable at common law.  But such texts nevertheless pose the same kind of harm that common law courts recognize – a concrete harm that Congress has chosen to make legally cognizable."); Cranor v. 5 Star Nutrition, 998 F.3d 686, 692 (5th Cir. 2020) (finding "aggravating and annoying text messages" that "depleted the battery life on [Plaintiff's] cellular phone and . . . allocated to him by his cellular telephone service provider" sufficient personal harm to establish Article III injury-in-fact); Melito v. Experian Marketing Solutions, Inc., 923 F.3d 85, 93 (2d. 2019) (holding unsolicited text messages are "the very injury the TCPA is intended to prevent"); Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1042-43 (9th Cir. 2017) (holding unsolicited text messages constitute the precise harm Congress sought to protect in enacting the TCPA and represent an invasion of privacy rights long heard before American courts); see also Sagar v. Kelly

---

[3]  While the parties make similar arguments, they seek different outcomes.  Plaintiff challenges jurisdiction seeking remand, see Pl.'s Mem. Supp. Mot. Remand, ECF 15, while Defendants seek dismissal, see Defs.' Res. Pl.'s Mot. Remand, ECF 16.

Automotive Group, Inc., No. 21-CV-10540-PBS, 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) ("[I]n light of the TCPA, the receipt of unsolicited telemarketing text messages, on its own, is sufficient to establish a concrete injury in fact."). But see Salcedo v. Hanna, 936 F.3d 1162, 1170-72 (11th Cir. 2019) ("a single unwelcome text message will not always involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does," and therefore a single text does not constitute an injury in fact).

The Court agrees with the weight of authority. Cranor is especially on point in that it involves nearly identical facts to those alleged here. Plaintiff, as discussed above, claims "aggravation and annoyance," as well as the financial harm that came from "us[ing] the limited text messages" and "deplet[ing] the battery life." Compl. ¶¶ 90-97; see Cranor, 998 F.3d at 692. And his Complaint asserts the type of privacy violations these circuits analogize to "harms that [have] traditionally been regarded as the basis for a lawsuit." Melito, 923 F.3d at 93; see also Gadelhak, 950 F.3d at 462-63; Van Patten, 847 F.3d at 1042-43. Thus, the Court finds Plaintiff suffered a sufficient injury to establish Article III standing, and his Motion to Remand, ECF No. 15, is DENIED.

B.  Motion For Judgment on The Pleadings

Having assured itself of jurisdiction, the Court turns to Defendants' Motion for Judgment on the Pleadings.

1.  Legal Standard

"The standard of review is the same for both a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and a motion to dismiss under Rule 12(b)(6)." Laccinole v. Assad, No. CV-14-404 S, 2016 WL 868511, at *2 (D.R.I. Mar. 7, 2016) (citing Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2016)).  To survive a motion for judgment on the pleadings, Plaintiff must present "factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Thus, when considering this motion, a court "must first cast aside conclusory legal statements and recitals of elements." Laccinole v. Appriss, 453 F. Supp. 3d 499, 502 (D.R.I. 2020) (citing Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d, 1, 12 (1st Cir. 2011)).  Then, the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences in his favor." Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007).  Pro se pleadings "must be construed liberally." Appriss, 453 F. Supp. 3d at 504.  And "claims based on alleged

violations of the TCPA do not require the usual level of
particularity." Id. (quoting Rosenberg v. LoanDepot.com LLC, 435
F. Supp. 3d 308, 323 (D. Mass. Jan. 24, 2020)).

> 2.  R.I. DTPA Claims and TCPA Claims Authorized By 227(D)
>     (Counts IV, V, XVI, XVII, and XXVI)

Plaintiff's Rhode Island DTPA claims are easily dismissed.
To bring a successful DTPA claim, the parties must have a "vendor-
consumer" relationship. Appriss, 453 F. Supp. 3d at 506 (citing
Kelley v. Cowesett Hills Assoc., 768 A.2d 425, 431 (R.I. 2001)).
Plaintiff neither alleges that he "purchased goods or services,"
nor that he "was asked to purchase goods or services" by S4L.
Appriss, 453 F. Supp. 3d at 506.  He therefore fails to state a
plausible claim under the DTPA and Count XXVI is dismissed.

Counts IV, V, XVI, and XVII also fail.  Plaintiff brings these
claims under §§ 47 C.F.R 64.1200(b)(1)-(3).  But 42 U.S.C.
§ 227(d), the procedural and technical subsection of the TCPA
authorizing these regulations, "does not provide a private cause
of action."  Laccinole v. Navient Sols., LLC, C.A. No. 1:21-CV-
00045-MSM-PAS, 2022 WL 656167, at *3 (D.R.I. Mar. 4, 2022); see
Boydston v. Asset Acceptance LLC, 496 F. Supp. 2d 1101, 1110 (N.D.
Cal. 2007) ("The remedy for violations of the [TCPA's] procedural
and technical standards confers no private right of action.").
Thus, Counts IV, V, XVI, and XVII are dismissed.

2.   Telephone Consumer Protection Act

    i.   ATDS Claims (Counts I, II, and XIV)

The TCPA restricts the use of automated telephone equipment to prevent robocalls.  Plaintiff must plead "(1) that [Defendants] made a telephone call (2) for non-emergency purposes or without his prior express consent (3) using an automatic dialing system or artificial recorded voice (4) to a telephone number assigned to a cellular telephone service."  Laccinole v. Rocket Mortg., LLC, C.A. No. 21-478-JJM-LDA, 2022 WL 2355430, at *2 (D.R.I. June 30, 2022).  An automatic telephone dialing system "must have the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."  Id. (citing Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021)).  Defendants challenge whether Plaintiff has plausibly pleaded use of an ATDS.

TCPA claims "do not require the usual level of particularity," Rocket Mortg., 2022 WL 2355430, at *2, presumably because it is very difficult for a plaintiff to know what equipment was used to dial.  Rather, courts have used proxies to assess the plausibility of a plaintiff's claim that they were called by an ATDS.  Some have considered "indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used."  Jones v. FMA All. LTD, 978 F. Supp. 2d 84, 87 (D. Mass. 2013).

Others have considered "the number or frequency of messages, the ability to respond or interact with the messages, and whether a SMS short code or long code was used to send the message." <u>Barton v. Temescal Wellness, LLC</u>, 525 F. Supp. 3d 195, 200 (D. Mass.) (citing <u>Schley v. One Planet Ops Inc.</u>, 445 F. Supp. 3d 454, 460-61 (N.D. Cal. 2020).

Here, considering Plaintiff's <u>pro</u> <u>se</u> status and the relaxed standard for TCPA claims, Plaintiff's allegation that S4L used an ATDS clears the plausibility hurdle. First, the text messages do not contain Plaintiff's name or any other identifying information. <u>See</u> Compl. ¶¶ 40, 45, 51. Although S4L's messages were not commercial in nature, Plaintiff provides at least some evidence the text messages were repetitive, impersonal, and included a generic opt-out menu. <u>See</u> <u>Scanlon v. Manscaped, LLC</u>, C.A. No. 20-10795-IT, 2020 WL 13454130, at *3 (D. Mass. Dec. 14, 2020), report and recommendation adopted, 2021 WL 9059744 (D. Mass. Jan. 20, 2021).

Defendants next argue that even if they <u>did</u> use an ATDS, the messages are not protected by the TCPA because they were not solicitous. Not so. ATDS provisions apply more broadly than solicitor-specific provisions; the relevant TCPA sections read "it shall be unlawful for <u>any</u> <u>person</u>," 47 U.S.C. § 227 (b)(1)(A), and "no <u>person or entity</u> may . . . initiate any telephone call . . . using an automated telephone dialing system." 47 C.F.R.

§ 64.1200(a)(1) (emphasis added).  Contrast these with other TCPA provisions, all of which contain specific language about "telephone solicitors."[4]  Thus, because Plaintiff plausibly pleads that Defendants used an ATDS, and because the provisions are not specific to solicitation, the Court denies Defendants' Motion for Judgment on the Pleadings for Counts I, II, and XIV.

    ii.  Claims Related to Telemarketing or Solicitation (Counts III, VI-XIII, XV, and XVIII-XXV)

Plaintiff alleges sixteen further violations of the TCPA involving telemarketing or solicitation.[5]  Defendants argue that the text messages were not, in fact, solicitous.  Thus, the inquiry turns on whether S4L's text messages were for a telemarketing or solicitation purpose.

Under the TCPA, a call is a solicitation if it is made for "the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."  47 U.S.C. § 227(a)(5).  The Federal Communications Commission explained that "messages that do not promote a commercial product or service, including all messages involving political or religious discourse . . . are not unsolicited advertisements under the TCPA."  In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act

---

[4]  See, e.g., §§ 47 C.F.R. 64.1200(c)(2); 47 C.F.R. 64.1200(d)(1)-(6).  See also 47 U.S.C. 227(c)(5).

[5]  See, e.g., 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(d)(1)-(6); 47 U.S.C. 227(c)(5).

of 1991 Junk Fax Prevention Act of 2005, 21 F.C.C. Red 3787, 3810 (2006).

Requests for political contribution in the form of membership fees have been held to be not solicitous.  See McEwen v. Nat'l Rifle Ass'n of Am., No. 2:20-CV-00154-LEW, 2021 WL 1414273, at *5-6 (D. Me. Apr. 14, 2021).  And same with invitations to visit facebook.com, absent encouragement to "purchase or [rent], or invest[] in, property, goods, or services."  Suttles v. Facebook, Inc., 461 F. Supp. 3d 479, 483 (W.D. Tex. 2020).  When a website does advertise a commercial product or service, however, the message may be a solicitation.  See Barton, 525 F. Supp. 3d at 202 (finding call prompting recipient to visit website listing menu of items for sale may be considered a solicitation).

Here, S4L's text messages are not solicitous because the messages (1) involve political discourse and (2) do not encourage Plaintiff to visit a website encouraging the purchase or rental of property, goods, or services.

First, S4L's text messages strictly involve ways to politically engage with the anti-abortion movement; they do not solicit the purchase of any goods or services as prohibited by the TCPA.  See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005, 21 F.C.C. Red at 3810.  The messages ask Plaintiff to "call your U.S. Representative to tell him/her to vote NO on ERA," Compl. ¶ 51,

"watch the largest pro-life training in the world LIVE online TOMORROW," id. ¶ 45, "watch the timelapse of the world's biggest pro-life March today in DC," id., "visit Students For Life's Facebook page . . . and check out this video!," id. ¶ 40, linking to each website.

Second, as in Suttles, none of these messages or their linked websites solicited Plaintiff to purchase a good or service. 461 F. Supp. 3d at 483. Instead, the messages promote political discourse – exactly the type of messages the F.C.C. declined to protect consumers from under TCPA's definition of "solicitation."[6] Plaintiff acknowledged as much in his Complaint. Compl. ¶ 29 ("At all times relevant to this Complaint, Defendants were engaged in political advocacy through text messaging.").

As the text messages are not solicitous, Counts III, VI-XIII, XV, and XVIII-XXV are dismissed.

3. Rhode Island Right to Privacy (Count XXVII)

In Count XXVII, Plaintiff alleges that Defendants violated his right to privacy as protected by state law. Compl. 2-3, 9.

---

[6] Plaintiff's further allegations under the Virginia Telephone Privacy Act rest on a nearly identical definition of solicitation. Va. Code § 59.1-510. Because Plaintiff has failed to allege any facts indicating S4L attempted to sell him something, the Complaint does not establish the requisite commercial relationship. Count XXV therefore fails as well.

He claims Defendants "bombard[ed]" him with text messages despite his repeated requests to stop.  Id. ¶¶ 38, 46, 59-60.

To recover for a violation of Rhode Island's right to privacy statute, "it must be established that: (A) [there] was an invasion of something that is entitled to be private or would be expected to be private; (B) the invasion was or is offensive or objectionable to a reasonable man."  R.I. Gen. Laws § 9-1-28.1(a)(1).  In Appriss, this Court found Plaintiff alleged a plausible invasion of privacy based on the "unreasonable intrusion upon the seclusion of another," a protection "encompassed within the 'common law tort.'"  453 F. Supp. 3d at 507 (quoting Pontbriand v. Sundlun, 699 A.2d 856, 863 (R.I. 1997)).  There, "Appriss called [Laccinole's] cellular telephone more than sixty times after he asked to receive no further calls" and "called Laccinole once every hour for thirteen consecutive hours."  Id.

Plaintiff's alleged injuries do not rise to the level of an "unreasonable intrusion upon the seclusion of another."  Id.  Here, there is not the same allegedly overwhelming volume and frequency of the phone calls.  See Appriss, 453 F. Supp. 3d at 506-507.  Although Plaintiff alleges "the text messages continued for months," Compl. ¶¶ 46, 58, he provides only three examples of S4L initiating texts to him.  Id. ¶¶ 40, 45, 51.  The other texts were error messages in response to Plaintiff sending messages such as "STOP" or "Please don't send me any more messages."  Id. ¶¶ 39-

15

42, 57-59.   These  texts  are  not  sufficiently  intrusive  for Plaintiff  to  plausibly  state  a  claim  and  Count  XXVII  is  thus dismissed.

        4. Motion to Strike and Motion for Sanctions

      Defendants Motion to Strike Plaintiff's Reply is DENIED as MOOT.  Because they have failed to show this litigation was filed in "bad faith, vexatiously, wantonly, or for oppressive reasons," Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991), Defendants Motion to Declare Plaintiff a Vexatious Litigant and for Sanctions, ECF No. 13, is also DENIED.[7]

---

      [7] The Court, however, cautions Plaintiff that his use of metaphorical language is both inappropriate and ineffective. While pro se litigants are afforded certain latitude with respect to pleading standards and the like, the Court expects parties and litigants to act at all times with courtesy – both in their interactions with each other and the Court, and in their written filings.

III. CONCLUSION

For these reasons, Plaintiff's Motion to Remand, ECF No. 15, is DENIED.  Defendants' Motion for Judgment on the Pleadings, ECF No. 12, is GRANTED in part and DENIED in part.  Counts III-XIII and XV-XXVII are dismissed.  Counts I, II, and XIV survive. Defendants' Motion to Strike Plaintiff's Reply, ECF No. 20, is DENIED as moot.  Defendants' Motion to Declare Plaintiff a Vexatious Litigant and for Sanctions, ECF No. 13, is DENIED.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
U.S. District Judge
Date: August 4, 2022

17